**eSPEED, INC.; Cantor Fitzgerald, L.P.; and CFPH, L.L.C., Plaintiffs,**

v.

**BROKERTEC USA, L.L.C.; Brokertec Global, L.L.C.; Garban, LLC; ICAP PLC; OM AB; and OM Technology (U.S.), Inc., Defendants.**

Civ.A. No. 03–612–KAJ.

United States District Court, D. Delaware.

Oct. 25, 2004.

Jack B. Blumenfeld, Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for plaintiffs. Of counsel: Gary A. Rosen, Law Offices of Gary A. Rosen, P.C., David J. Wolfsohn, Alan C. Promer, Michele D. Hangley, Hangley Aronchick Segal & Pudlin, Philadelphia, PA.

Richard L. Horwitz, David E. Moore, Potter Anderson & Corroon LLP, Wilmington, DE, for defendants. Of counsel: James W. Dabney, Peter L. Simmons, Henry C. Lebowitz, Fried, Frank, Harris, Shriver & Jacobson LLP, New York City.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I. INTRODUCTION

This is a patent infringement case, set for a jury trial beginning on February 7, 2005. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Presently before me are four Motions for Summary Judgment (Docket Items ["D.I."] 466, 469, 472, and 475) and one Motion for Reargument on Claim Construction (D.I. 521) filed by eSpeed Inc., Cantor Fitzgerald L.P., and CFPH L.L.C. (collectively, "Plaintiffs" or "eSpeed") and two Motions for Summary Judgment (D.I. 479, 481) filed by BrokerTec USA LLC, et al., (collectively, "Defendants" or "BrokerTec"). On August 2, 2004, eSpeed filed a Motion for Partial Summary Judgment of No Invalidity Due to Obviousness (D.I. 466), a Motion for Partial Summary Judgment on Issue of Non-infringing Alternatives (D.I. 469), a Motion for Partial Summary Judgment of Literal Infringement (D.I. 472), and a Motion for Partial Summary Judgment on Issue of Inequitable Conduct (D.I. 475). On August 2, 2004, BrokerTec filed a Motion for Summary Judgment of Invalidity. (D.I. 479.) On August 3, 2004 BrokerTec filed a Motion for Summary Judgment of Non–Infringement. (D.I. 481.) For the reasons set forth herein, all of the Motions are denied, except for Defendants' Motion for Summary Judgment

of Non–Infringement (D.I. 481), which is granted in part, solely as to noninfringement under the doctrine of equivalents as pertaining to the "control trading" claim limitation.

## II. BACKGROUND

Because the procedural and factual history of this case is by now familiar to those concerned[1], I will set forth only those facts that are pertinent to the Motions under consideration.

eSpeed instituted this action on June 30, 2003, seeking a judgment of willful infringement of U.S. Patent No. 6,560,580 B1 (issued May 6, 2003) (the " '580 patent") against BrokerTec.

The '580 patent discloses "[a] data processing system for implementing transaction management of auction-based trading for specialized items such as fixed income instruments." ('580 patent, Abstract (D.I. 463, Ex. A).) The System provides "a highly structured trading protocol" (*id.*) that the parties commonly refer to as an electronic trading platform. *See eSpeed I,* 2004 WL 62490 at *1, 2004 U.S. Dist. LEXIS 385 at *3. The Plaintiffs argue that the Defendants operate two electronic trading platforms that infringe the '580 patent, namely, the BrokerTec ETN and the Garban ETC/GTN.[2] (D.I. 464 at 2.) Specifically, Plaintiffs allege that Defendants' electronic trading platforms infringe the "workup protocol" claimed in each of the independent asserted claims of the '580 patent, that is, claims 20, 22, 24, and 29. (*Id.* at 3–5.)

The application for the '580 patent, U.S. Patent Application No. 09-294526 (the " '526 application"), was filed on April 20, 1999. Claim 20 of the '526 application is set forth below with certain terms that correspond to the "workup protocol" of the '580 patent in italics:

20. A method of financial instrument trading implemented on a distributed workstation computer system, wherein said system provides for a predetermined trading protocol delineating trader access comprising the steps of:

(a) providing a Bid/Offer System State wherein customers participate by entry bid, offers, price and volume information;

(b) distributing said information to said plural workstations in essentially real time;

(c) receiving hits and/or lifts from said customers responding to pending bids/offers as displayed on said workstations;

(d) *entering a Trading State wherein transactions are completed at a single price;*

(e) *returning to the Bid/Offer State after a preestablished termination event in said Trading State;*

(f) tracking and outputting consumed trades from said Trading State.

('526 application, pp. 37–8 (D.I. 142 at 00254–55) (emphasis added).) The original claims in the '526 application, including the above cited claim, were rejected in the first office action from the Patent and Trademark Office (the "PTO") under 35 U.S.C. §§ 102 and 103. (D.I. 143 at 00612–19.) The applicants then petitioned the PTO to withdraw the rejection because the filling fee was not properly paid. (D.I. 143 at 00625–28.) Thereafter, the appli-

---

**1.** *See eSpeed I,* 2004 WL 62490, 2004 U.S. Dist. LEXIS 385; *see also eSpeed II,* 2004 U.S. Dist. LEXIS 13486.

**2.** For a more thorough description of the technology disclosed by the '580 patent and additional background information pertaining to this case, *see eSpeed I,* 2004 WL 62490 at *1–*2, 2004 U.S. Dist. LEXIS 385 at *3–*5; *see also eSpeed II,* 2004 U.S. Dist. LEXIS 13486 at *2–*7.

cants filed a preliminary amendment cancelling all of the original claims and adding all of the claims in the now issued '580 patent. (D.I. 463, Ex. L.)

The claims filed in the preliminary amendment issued without further alteration. (D.I. 463, Ex. L.; '580 patent, col. 20, ll. 4–29.) Claim 20, set forth below with disputed claim terms in italics, exemplifies the claimed workup protocol that is in dispute:

A method implemented on a distributed workstation computer system for trading an item between passive participants and an aggressor participant, the method comprising:

providing a bid/offer system state wherein the passive participants participate by entering bids or offers at select prices and volumes for the item;

distributing the bids or offers to the workstations;

receiving a hit or lift from the aggressor participant in response to one or more of the bids or offers to trade a desired volume of the item at a desired price; and

transitioning to a trading system state wherein:

(a) a trade transaction is executed, at a defined price set by the hit or lift, between the aggressor participant and each passive participant whose bid or offer had been hit or lifted by the aggressor participant;

(b) a period of exclusivity is provided during which the aggressor participant and a designated passive participant may *control trading* by transacting additional volume of the item with each other at the defined price to the exclusion of other participants desiring to participate in trading; and

(c) upon termination of the period of exclusivity, new trade transactions involving the other participants are tested for and executed at the defined price

without providing the other participants a period of exclusivity to *control trading.*

('580 patent, col. 20, ll. 4–29.) (emphasis added).

## III. STANDARD OF REVIEW

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1362 (Fed.Cir.1998). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Schering Corp. v. Geneva Pharm., Inc.,* 339 F.3d 1373, 1381 (Fed.Cir.2003) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor." *Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041, 1045 (Fed.Cir. 2001). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

Based on the record before me, I conclude that, with the limited exception noted hereafter, there are genuine issues of material fact that prevent the entry of summary judgment.

### A. Defendant's Motion for Summary Judgment of Non–Infringement

With regard to this motion, there is a material issue of fact regarding Defendants' infringement of the "control trading" limitation; however, Plaintiffs are barred from asserting the doctrine of equivalents as to this limitation, due to prosecution history estoppel.

#### 1. Literal Infringement

In a patent infringement analysis, application of the claim to the accused process or product is a question of fact. *Kustom Signals, Inc. v. Applied Concepts, Inc.,* 264 F.3d 1326, 1332 (Fed.Cir.2001). Summary judgment in patent suits is appropriate when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001). Literal infringement is found only when each and every limitation of a claim is present in the accused product. *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001).

Defendants admit that their system infringes the first two contested claims, as I have construed them, namely "system state" and "bid/offer system state." (See D.I. 496 at 6; *eSpeed II,* 2004 U.S. Dist. LEXIS 13486 at *26–*27.) Defendants contend, however, that their system "does not, by deliberate design, provide the end results described in the asserted '580 patent claims, namely, a period of exclusivity during which participants can 'control trading by transacting additional volume,' as recited in representative claim 20 ...." (D.I. 482 at 19.) I have construed the term "control trading" to mean "to exercise authority to hold up a trade for as *long as a participant continues to respond* to its contra-party's size offering." (D.I. 516 at 17 (emphasis added).)

Plaintiffs and Defendants have submitted several documents in support of their respective positions on non-infringement. The three most pertinent documents appear to be the Declaration of Daniel Cleaves (D.I. 111), another document titled "Overview of Spring Release for Sales Team" (D.I. 474, Ex. H), and another document titled "ICAP Stacking System (Trading System)" (D.I. 465, Ex. 2).

In particular, attached to the Declaration of Daniel Cleaves is an email that was sent from him to the Sales and Marketing Group on May 21, 2002, stating that, in BrokerTec's trade workup logic, a "[p]rivate phase cannot be extended and timer does not reset." (D.I. 111, Ex. 1, at 2.) This plainly supports BrokerTec's position. So too does the first page of the "Overview of Spring Release for Sales Team" document states that "duration of private phase is limited to configurable number of seconds." However, the next page of that document goes on to state that the "Volleys" are not limited in the private phase (*id.*), implying that two parties can continue to trade exclusively, assuming that whatever timer they are on resets as they continue to trade.

Evidence that such a reset may indeed be part of the Defendants' system is found

in the "ICAP Stacking System (Trading System)" (the "ICAP" document). ICAP is the system used by Garban to process orders.[3] The ICAP document states that "once you have rights, the only way to lose that right is to click 'Out' or you do not execute additional quantities. The timer resets itself each time additional quantities are executed." (D.I. 465, Ex. 2 at 1–2.) The same document also states:

> If a bid is hit, we then go to the Hit/ Take Timer. This allows the aggressor or the passive bidder to have 10 seconds to indicate whether they want to sell or buy another. If within the original 10 seconds he does buy or sell another, the timer will restart for another 10 seconds. Once timer stops, it becomes a "Matching System" and the first in wins.

(*Id.*)

Plaintiffs assert that, with respect to certain instruments, orders from Broker-Tec's customers are routed to Garban's back-end systems. (D.I. 510 at 10–11.) Plaintiffs' expert Peter R. Locke stated in his expert report that, according to the "BrokerTec Technology Bulletin," although the trading of off-the-run U.S. Treasuries are routed to Garban's back-end system, users of the Brokertec system when trading in these instruments can continue to extend their period of exclusivity by continuing to buy. (D.I. 363 at ¶ 89.) Mr. Locke allegedly verified this

during his inspection of the BrokerTec system. (*Id.*)

These documents and testimony demonstrate that there remains a genuine issue of material fact as to whether Defendants' electronic trading platform does or does not provide a period of exclusivity that can be continually extended.[4] (See D.I. 111, Ex. 1, at 2; D.I. 111 at ¶ 6; D.I. 474, Ex. H at B008687; D.I. 465, Ex. 2 at 1–2; D.I. 510 at 10–11; D.I. 363 at ¶ 89.) It is unclear if a user in the "private phase" of the Defendants' system could continue to trade indefinitely, *i.e.*, without a time limitation, by buying additional quantities. Consequently, there is a material issue of fact as to whether Defendants infringed the '580 patent, in light of my construction of the term "control trading." *See eSpeed II*, 2004 U.S. Dist. LEXIS 13486 at *26–*27.

### 2. *Infringement Under the Doctrine of Equivalents*

■ There is, however, no question that Plaintiffs are not entitled to any range of equivalents with respect to the "control trading" limitation, because of prosecution history estoppel.

In the instant case, Plaintiffs admit that the claims in question were all added by preliminary amendment. (D.I. 490 at 22.) Nevertheless, they contend that "*Festo* ... does not apply to claims that issue in the form in which they are originally added

---

3. In my June 15 Memorandum Order in this case, I noted that the "Cross Connect Project allowed Garban's and BrokerTec's customers to trade electronically on either the ETC *or* BrokerTec 'front end' trading system, but both front ends were modified so that they automatically directed the trade to either the ETC or BrokerTec 'back end' or 'matching engine.' As a result, BrokerTec and Garban customers are able to trade on both matching engines simultaneously, whereas they were unable to do so before." *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 2004 U.S. Dist. LEXIS 13486 at *3–*5 (D.Del.2004) (internal citation omit-

ted). Defendants maintain that the Cross Connect Project "did not involve any merging or linking of the Garban and BrokerTec back end systems," (D.I. 249 at 8) however, the extent to which the Cross Connect Project's software was integrated into their respective system remains unclear.

4. There also remains a factual question as to how closely intertwined the BrokerTec and Garban systems actually are, which prevents entry of summary judgment of non-infringement regarding BrokerTec's back-end system. (*See* D.I. 510 at 11.)

...." (*Id.*) That is a misinterpretation of *Festo*. In that case, the Court held that "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). On remand in *Festo*, the Federal Circuit held that a "voluntary amendment may give rise to prosecution history estoppel." *Festo*, 344 F.3d 1359, 1366 (Fed.Cir.2003) (on remand) (internal citations omitted). Further, the Federal Circuit has recently held:

> If only narrowing amendments to preexisting claim limitations could give rise to the presumption, the purpose of preventing patentees from recapturing subject matter conceded during prosecution would be undermined. Astute practitioners could, through clever claim drafting, elect to treat most, if not all, amendments as merely adding new claim limitations rather than narrowing preexisting ones. For these reasons, we hold that an amendment adding a new claim limitation constitutes a narrowing amendment that may give rise to an estoppel.

*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141 (Fed.Cir.2004).

■ It is clear from the case law that all material in the prosecution history should be consulted when determining if there is prosecution history estoppel. *See, e.g.*, *Festo*, 535 U.S. at 726, 122 S.Ct. 1831; *Ekchian v. The Home Depot, Inc.*, 104 F.3d 1299, 1303–04 (Fed.Cir.1997). Consequently, it is proper to compare the original and subsequently cancelled claims (D.I. 142 at 00254–55) to the issued claims that were added by preliminary amendment (D.I. 463, Ex. A).

Comparing the two sets of claims demonstrates that the scope of the limitations was narrowed. The original claim 20 in the '526 application describes trading as follows:

> (d) entering a Trading State wherein transactions are completed at a single price;
>
> (e) returning to the Bid/Offer State after a pre-established termination event in said Trading State ...

('526 application, pp. 37–8 (D.I. 142 at 00254–5).)

Claim 20 in the '580 patent, in contrast, states as follows:

> (b) a period of exclusivity is provided during which the aggressor participant and a designated passive participant may *control trading* by transacting additional volume of the item with each other at the defined price *to the exclusion of other participants* desiring to participate in trading; and
>
> (c) upon termination of the period of exclusivity, new trade transactions involving the other participants are tested for and executed at the defined price without providing the other participants a period of exclusivity to *control trading*.

('580 patent, col. 20, II. 4–29) (emphasis added). Claim 20 of the '580 patent thus includes additional limitations, not part of the '526 application. The claim as issued allows participants to "control trading" and to do so "to the exclusion of other participants." ('580 patent, col. 20, II. 4–29.)

■ The Supreme Court has held that "estoppel applies to amendments made for a substantial reason related to patentability ...." *Festo*, 535 U.S. at 735, 122 S.Ct. 1831. I must, however, treat "a narrowing amendment as having been made for a 'substantial reason related to patentability' when the record does not reveal the reason for the amendment." *Festo*, 344 F.3d at 1366. In the instant case, no reason is given for the cancelling of claim 20 in

the '526 application and subsequent addition of the now issued claim 20. As an "unexplained amendment—just like a narrowing amendment made for a reason of patentability—triggers a rebuttable presumption that the patentee has surrendered the entire territory between the original and the amended limitations," the applicants' amendment to the '526 application raises such a presumption. *Id.* at 1371.

To rebut this presumption, "the patentee must demonstrate that ... the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question." *Id.* at 1369. The applicants' rationale in amending the '526 application appears to be directly related to overcoming the examiner's first rejection. Thus, the patentee voluntarily waived all equivalents between the original claims and the issued claim. Therefore, the patentee cannot show a mere tangential relationship between the narrowing amendment and the equivalent in question, and, consequently, the patentee is barred from asserting the doctrine of equivalents with respect to this aspect of the claims. *See id.*

### B. Plaintiffs' Motion for Partial Summary Judgment of Literal Infringement

With respect to Plaintiffs' Motion for Partial Summary Judgment of Literal Infringement (D.I. 472), the same issues discussed with respect to Defendants' Motion for Summary Judgment of Non–Infringement (D.I. 481) are in dispute, and therefore summary judgment is not appropriate.

### C. Plaintiffs' Motion for Partial Summary Judgment of No Invalidity Due to Obviousness

■ In Plaintiffs' Motion for Partial Summary Judgment of No Invalidity Due to Obviousness there are, again, issues of

material fact in dispute, namely, the issue of motivation to combine the prior art. In their Motion, Plaintiffs suggest that a person of ordinary skill in the art would not have known of the trading rules used in the '580 patent and there is no prior art to suggest turning those trading rules into a computerized trading system. (D.I. 467 at 3–5.) However, the analytically required "hypothetical inventor" would have known about those trading rules. *See In re Wright,* 848 F.2d 1216, 1219 (Fed.Cir.1988) (holding that "[i]n evaluating obviousness, the hypothetical person of ordinary skill in the pertinent art is presumed to have the ability to select and utilize knowledge from other arts reasonably pertinent to [the] particular problem to which the invention is directed"). As the hypothetical person of ordinary skill in the art would have been aware of the pertinent trading rules, there is an issue of fact as to whether that person would have been motivated to combine the prior art to create the invention described in the '580 patent.

### D. Plaintiffs' Motion for Partial Summary Judgment on Issue of Inequitable Conduct

■ With respect to Plaintiffs' Motion for Partial Summary Judgment on Issue of Inequitable Conduct, the parties' arguments revolve around what the "new rules" in eSpeed's Super System consisted of prior to filing the '580 patent and whether their attorney withheld that information from the Patent and Trademark Office ("PTO"). (D.I. 475.) The Federal Circuit has held that, as to inequitable conduct, the "intent to mislead or deceive is a factual issue that, if contested, is not readily determined within the confines of Fed. R. Civ. Proc. 56." *KangaROOS U.S.A. v. Caldor, Inc.,* 778 F.2d 1571, 1576 (Fed.Cir. 1985). The parties dispute what was contained in the "new rules" of Plaintiffs' Super System and what material should have

been disclosed to the PTO. (*See, e.g.,* D.I. 493; D.I. 507.) As is more fully discussed in connection with BrokerTec's Motion for Summary Judgment of Invalidity, *infra* at 15–19, there is a genuine issue of material fact with respect to the content of the "new rules", and therefore this issue is not suitable for summary judgment.

E. *Plaintiffs' Motion for Partial Summary Judgment on Issue of Non–Infringing Alternatives*

■ With regard to Plaintiffs' Motion for Partial Summary Judgment on Issue of Non–Infringing Alternatives, I hold that, contrary to Plaintiffs' contentions, BrokerTec's arguments at the preliminary injunction proceedings and their present arguments regarding non-infringing alternatives can be construed as consistent. (D.I. 469.) At the preliminary injunction proceedings, BrokerTec asserted that if it removed the workup protocol from its system it would not be a viable platform. (D.I. 131 at 94–97.) Presently, Brokertec asserts that there are non-infringing alternatives to the "workup" claimed in the '580 patent. (D.I. 494 at 5.) I do not find these statements inconsistent because, at the preliminary injunction phase, Brokertec may not have had a viable alternative workup protocol that it could have used to replace its allegedly infringing one. That does not, however, preclude BrokerTec from ever creating such a workup protocol. In any event, Defendants' behavior does not warrant invoking judicial estoppel, which is an "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 365 (3d Cir.1996).

F. *BrokerTec's Motion for Summary Judgment of Invalidity*

In BrokerTec's Motion for Summary Judgment of Invalidity, Defendants raise five claims of invalidity: 1) 35 U.S.C. § 102(b) public use; 2) 35 U.S.C. § 102(f) derivation; 3) 35 U.S.C. § 112 new matter; 4) inequitable conduct; and 5) 35 U.S.C. § 103(a) obviousness. (D.I. 480.) Inequitable conduct and obviousness are discussed in relation to Plaintiffs' corresponding motions, *see supra* at 12–14, and the same issues of material fact make summary judgment for Defendants on those grounds inappropriate.

1. *35 U.S.C. § 102(b)—Public Use*

The public use defense in this case depends, *inter alia,* on Plaintiffs' Super System having the same capabilities as those claimed in the '580 patent. (D.I. 480 at 2.) The parties, of course, disagree as to whether the Super System had the same functionality as the later developed system, known as "CFTS," which became the subject of the '580 patent. (D.I. 480 at 4–22; D.I. 488 at 4–12.) As to the Super System's capabilities prior to filing the '526 application, both parties rely on deposition testimony to demonstrate those capabilities. (*See, e.g.,* Rogers Dep. (D.I. 457 at 50, 52–53, 61) (stating that prior to 1993, the new rules, later used in the CFTS, were enabled in the Super System); Bijoy Dep. (D.I. 489 138–142) (stating that the definition of the new rules was constantly changing and that the Super System and the CFTS did not use the same rules in their respective codes).) The parties also rely on experts when explaining their positions. (*See* Martin C. Rinard Dec. (D.I. 480, Ex. 6) (stating that the code provided to him led him to the conclusion that the Super System and the CFTS system had the same functionality); Phil Hall Dec. (D.I. 489, Ex. 17) (stating that Rinard did not have the complete Super System code when he made his determinations and that he made improper assumptions when reaching his conclusions).)

■ It is important to note that it is not the "task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage." *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1316 (Fed.Cir.2002). As discussed above, the parties rely on conflicting witnesses' testimony to support their claims and, in addition, their experts are at odds over the proper method to interpret Super System's source code. Consequently, this issue is not proper for summary judgment. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1357 (Fed.Cir.2001) (holding that "where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate").

### 2. *35 U.S.C. § 102(f)—Derivation*

Defendants also argue that the patent should be considered invalid under 35 U.S.C. § 102(f) because the listed inventors of the '580 patent were not the actual inventors. This argument hinges on what eSpeed's Super System was capable of prior to 1993, the year that two prior employees, Ms. Abuwala and Mr. Silverstein, ceased working for the Plaintiffs, and whether those employees contributed to the conception of the idea that created the Super System. (D.I. 485 at 23.)

■ Defendants contend that Ms. Abuwala and Mr. Silverstein were the inventors of eSpeed's Super System and consequently are the true inventors of the invention claimed in the '580 patent. (*Id.*) Assuming, arguendo, that the Super System contained all of the limitations of the '580 patent, there is still a material question of fact as to whether Ms. Abuwala and Mr. Silverstein were co-inventors of the Super System.

■ It is presumed the named inventors are the "true and only inventors." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed.Cir.1998). When trying to overcome that "heavy burden," the moving party cannot rely on merely the timing of conception. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1367 (Fed.Cir.2004) (reversing the district court's denial of Plaintiffs' motion for judgment as a matter of law with respect to the jury's finding of joint inventorship, holding that there was not "sufficient evidence in the record to support the jury's conclusion that Lilly demonstrated by clear and convincing evidence that ... [the third party] collaborated with [the named inventor] ... in a manner that could render him a joint inventor"). Nor can the proposed inventor's own testimony be relied on, as the "temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier, is simply too great ...." *Hess v. Advanced Cardiovascular Sys.*, 106 F.3d 976, 982 (Fed.Cir.1997) (holding that despite "snippets" of the inventor's testimony where he conceded that the alleged co-inventor was responsible for significant portions of the inventions and the alleged co-inventor's testimony that he was a co-inventor, the district court was correct in holding that the alleged co-inventor was not a co-inventor of the claimed invention).

To show that Ms. Abuwala and Mr. Silverstein were co-inventors, Defendants rely on testimony of the named inventor where he states that "I would communicate with my managers who were the designers, specifically Neil Silverstein and Hitendra Abuwala, understand what design is, communicate with them and transcribe that in code ...." (D.I. 455 at 189.) This statement, standing on its own, or in conjunction with the alleged inventors' testimony, cannot be said, at least not at this

stage, to constitute clear and convincing evidence that they were inventors. *See Hess,* 106 F.3d at 982. At best, this evidence shows that Ms. Abuwala and Mr. Silverstein were involved when the named inventors conceived their invention—if in fact it was conceived at that point in time, which is also contested by the Plaintiffs. In short, the evidence does not clearly show derivation. *See Eli Lilly,* 376 F.3d at 1367.

### 3. *35 U.S.C. § 112—New Matter*

■■■ Contrary to Defendants' assertions, "[w]hether a specification complies with the written description requirement of § 112 ... is a question of fact ...." *Moba v. Diamond Automation,* 325 F.3d 1306, 1319 (Fed.Cir.2003). With respect to this factual determination, it is particularly difficult to grant summary judgment, because, in addition to viewing all of the facts in a light most favorable to the non-moving party, "[a] patent is presumed valid, 35 U.S.C. § 282, and this presumption is based in part on the expertise of patent examiners presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1574 (Fed. Cir.1992).

■■■ The "test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession [of the later claimed subject matter] at that time ...." *Ralston Purina Co. v. Far–Mar–Co.,* 772 F.2d 1570, 1575 (Fed.Cir.1985). Defendants contend that the original application did not contain any reference to a "trader being a 'participant in the Workup State,' but not being assigned 'current worker' status." (D.I. 509 at 16.) Plaintiffs' expert, Peter R. Locke, stated in his report, however, that although two terms were misidentified in the original application, a person of ordinary skill in the art would recognize the mistake and understand the underlying meaning of the application. (D.I. 489, Ex. 19 at 5–6.) The current state of the record is thus at least sufficient to raise a question of material fact as to the sufficiency of the written description.

### G. *Plaintiffs' Motion for Reargument on Claim Construction*

■■■ A grant of reargument is only appropriate in "one of three circumstances: a) where the Court has patently misunderstood a party, b) where the Court has made a decision outside the adversarial issues presented to the Court by the parties, or c) where the Court has made an error not of reasoning but of apprehension ...." *Schering Corp. v. Amgen, Inc.,* 25 F.Supp.2d 293, 295 (D.Del. 1998). With regard to the claim construction opinion in this case, Plaintiffs contend that I "misapprehended the nature of the parties dispute." (D.I. 521 at 3.) Plaintiffs' specifically contend that my claim construction conflated the term "control trading" and the term "period." (*Id.*) That argument, however, describes what they believe the proper construction of the "control trading" limitation is. It does not describe any misapprehension of their earlier argument. I construed the term "control trading" in relation to the term "period," not in lieu of it. Plaintiffs' motion is not well-founded and is denied.

## V. CONCLUSION

Accordingly, eSpeed's Motion for Reargument on Claim Construction (D.I. 521), Motion for Partial Summary Judgment of No Invalidity due to Obviousness (D.I. 466), Motion for Partial Summary Judgment on Issue of Non-infringing Alternatives (D.I. 469), Motion for Partial Summary Judgment of Literal Infringement (D.I. 472) and Motion for Partial Summary

Judgment on Issue of Inequitable Conduct (D.I. 475); and BrokerTec's Motion for Summary Judgment of Invalidity (D.I. 479), will all be DENIED. BrokerTec's Motion for Summary Judgment of Non–Infringement (D.I. 481) will be DENIED except with respect to noninfringement under the doctrine of equivalents as pertaining to the "control trading" claim limitation, as to which exception that motion will be GRANTED IN PART. An appropriate order will follow.