# United States Court of Appeals for the Federal Circuit

2008-1363

NARTRON CORPORATION,

Plaintiff-Appellant,

v.

SCHUKRA U.S.A., INCORPORATED,

Defendant,

and

BORG INDAK, INC.,

Defendant-Appellee.

Frank A. Angileri, Brooks Kushman, P.C., of Southfield, Michigan, argued for plaintiff-appellant. With him on the brief were Robert C.J. Tuttle, Thomas A. Lewry, and Marc Lorelli.

Jeffrey A. Sadowski, Howard & Howard Attorneys, P.C., of Bloomfield Hills, Michigan, argued for defendant-appellee. With him on the brief were Melanie T. Frazier. Of counsel was Michael J. Sheehan.

Appealed from: United States District Court for the Eastern District of Michigan

Senior Judge Lawrence P. Zatkoff

# United States Court of Appeals for the Federal Circuit

2008-1363

NARTRON CORPORATION,

Plaintiff-Appellant,

v.

SCHUKRA U.S.A., INCORPORATED,

Defendant,

and

BORG INDAK, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Michigan in Case No. 06-CV-10683, Senior Judge Lawrence P. Zatkoff.

_____

DECIDED: March 5, 2009

_____

Before LOURIE, DYK, and PROST, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Nartron Corporation ("Nartron") appeals from the judgment of the United States District Court for the Eastern District of Michigan granting summary judgment of

dismissal of its patent infringement complaint because of Nartron's failure to join an alleged co-inventor on U.S. Patent 6,049,748 ("the '748 patent") as a plaintiff. See Nartron Corp. v. Borg Indak, Inc., No. 06-10683, 2008 WL 896060 (E.D. Mich. Mar. 31, 2008). Because Joseph Benson, the alleged co-inventor, provided only an insignificant contribution to the invention of claim 11 of the '748 patent by contributing an "extender," we reverse the grant of summary judgment to Borg Indak, Incorporated ("Borg Indak") and remand to the district court for further action consistent with this opinion.

BACKGROUND

Schukra U.S.A., Incorporated ("Schukra") supplies automobile manufacturers with lumbar support systems for automobile seats. In 1996, Schukra contracted with Nartron for Nartron to design a control system that would provide existing automobile seats with massage functionality. Nartron designed such a system and then applied for a patent relating to a vehicle seat control system that provides massage capability; that patent application matured into the '748 patent.

Borg Indak supplies electronic components to Schukra. In 2006, Nartron sued Borg Indak for contributory infringement of claims 1 and 7 of the '748 patent. Borg Indak moved for summary judgment of dismissal, alleging that Benson, a Schukra employee, was a co-inventor of claim 11 of the '748 patent and therefore needed to have been joined in the suit. Neither Schukra nor Benson had consented to or had joined the suit.

Claim 11, for which Benson is alleged to be a co-inventor, is a dependent claim. It depends from claim 6, which in turn depends from claim 5, which itself depends from claim 1. Claims 1, 5, 6, and 11 read as follows:

1. A seat control module for introducing massage to a seat control with an adjustable lumbar support, and control actuators, the control module comprising:

a modular housing including in-line connectors for coupling said module to a seat control harness connector;

an intercept interface for receiving inputs from said control actuators;

a driver for repeatedly adjusting said lumbar support position through a predetermined range of movement in response to one of said control actuators; and

a transparency simulator for maintaining full function of said seat control and removing indications of repeatedly adjusting said lumbar support position.

. . .

5. The invention as defined in claim 1 wherein said transparency simulator comprises time-based response to manipulation of said control actuators.

6. The invention as defined in claim 5 wherein said transparency simulator generates a first output in response to a manipulation of a said control actuator for a period of time less than a first predetermined period, and generating a second output in response to a manipulation of said control actuator for a period equal to or greater than said first predetermined time period.

. . .

11. The invention as defined in claim 6 wherein said lumbar support adjustor includes an extender.

'748 patent col.19 l.13–col.20 l.31. Thus, the key additional limitation in claim 11, which Benson is alleged to have contributed, is an extender for a lumbar support adjustor.

The specification provides only the following description of the extender: "A second motor 28 controls a lumbar support extender 30 and it governs the degree to which the lumbar support extends outwardly from the seat back toward a spinal curvature of an occupant. Both mechanisms 26 and 30 affect the position of the lumbar

support 32 of the seat mechanism 16." Id. at col.4 ll.28–33. The figures simply represent the extender 30 as a box in the circuit diagram of the control system. Id. at Figs. 1 & 2 (numeral 30).

The inventors listed on the '748 patent, all Nartron employees, presumptively invented the control system. However, they admit that they did not invent the lumbar support adjustor including an extender recited in claim 11, as Nartron's inventive contribution consisted of a control module that operated on existing automobile seats, some of which already included extenders for lumbar support adjustors. Benson claims to have provided Nartron with the idea for the extender for a lumbar support adjustor, although he admits that the idea of an extender for a lumbar support adjustor in an automobile seat was in the prior art. Oral Argument at 11:38–12:30, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1363.mp3 ("If you isolate the specific arm that extends out, that was in the prior art with respect to other lumbar supports.").

In March 2008, the district court granted Borg Indak's motion for summary judgment of dismissal. The court held that Benson was a co-inventor of the '748 patent because, according to the court, he had conceived of the extender element of claim 11, and, as a co-inventor, he was required to have been joined as a plaintiff in any infringement suit. The court reasoned that, contrary to Nartron's arguments, the '748 patent was not based exclusively on the control module and its software, and that the contribution of the mechanical extender to the claimed invention was not insignificant in quality because Benson had conceived of the massager unit and had developed a prototype. The court also found that there was no genuine issue of material fact regarding who had invented the extender because the named inventors had conceded

that they did not invent the extender, and Benson had provided evidence that he had been working on a lumbar support frame or basket (which operated as an extender) that provided a massage effect. The court also relied on Nartron's failure to provide any evidence to contradict Benson's evidence that he had conceived and reduced to practice an extender for a lumbar support adjustor. The court thus dismissed the case for failure to join a necessary plaintiff in the lawsuit. Benson's employer Schukra maintained a contractual relationship with the defendant Borg Indak. Thus, grant of the motion to dismiss effectively prevented Nartron from enjoining or obtaining damages from Borg Indak for patent infringement.

Nartron timely appealed the district court's dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review summary judgment determinations de novo. Netscape Commc'ns Corp. v. Konrad, 295 F.3d 1315, 1319 (Fed. Cir. 2002). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (quotation marks omitted).

Nartron argues that the district court erred in granting summary judgment of co-inventorship. According to Nartron, the extender for a lumbar support adjustor, recited in claim 11, was in the prior art and therefore could not have supported a claim of co-inventorship. Nartron also argues that the preamble of claim 1 includes "an adjustable lumbar support," making it clear that the lumbar support adjustor was part of the background of the invention and already existed. Instead, according to Nartron, the inventive aspect of the claimed invention is the controller, and Benson did not conceive

of the controller. Nartron argues that the specification states that the improvement is in the controller, not the hardware, of the automobile seat, and that the controller can be adapted to work with any automobile seat. Nartron also asserts that the drawings do not show any structure for the extender. Moreover, according to Nartron, irrespective of whether the extender for the lumbar support adjustor was in the prior art, Benson's alleged contribution is insignificant to the invention of the '748 patent. According to Nartron, one who merely poses a problem or suggests a possible result, rather than a means of accomplishing it, is not a joint inventor. In addition, Nartron asserts that the court erred by focusing solely on whether Benson conceived of an element of claim 11, without looking at the entire invention of claim 11, because inventorship focuses on the invention as a whole. Nartron also argues that the fact that the extender only appears in a dependent claim shows that the controller is patentable without the extender, further demonstrating the insignificance of Benson's contribution.

Borg Indak responds that, even though the lumbar support adjustor and extender were in the prior art, the named inventors admitted that they did not invent them but had been provided those aspects of the claimed invention by the customer, Schukra. Borg Indak adds that combinations of existing elements are patentable, so Nartron cannot eliminate the lumbar support aspect of claim 11 from the invention simply because it existed in the prior art. Borg Indak also argues that Benson and other Schukra employees contributed to aspects of other claims, in addition to claim 11, as Schukra provided Nartron with instructions to build a control module for an automobile seat that would provide particular functionality. Borg Indak also responds that Benson's contribution was not insignificant, as even the subject matter of dependent claims must

be invented by named inventors. Thus, according to Borg Indak, an aspect of a claim cannot be insignificant simply because it appears in a dependent claim.

Inventorship is a question of law, which we review without deference. Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998). "The inventors as named in an issued patent are presumed to be correct." Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997) (quotation marks omitted). Thus, a party alleging non-joinder "must meet the heavy burden of proving its case by clear and convincing evidence." Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358 (Fed. Cir. 2004).

We agree with Nartron that there is no genuine issue of material fact in this case and that Benson was not, as a result of suggesting an extender, a co-inventor of claim 11 of the '748 patent as a matter of law. Any contribution Benson made to the invention described in claim 11 by contributing an extender was insignificant and therefore prevents Benson from attaining the status of a co-inventor. "One who simply provides the inventor with well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed combination as a whole does not qualify as a joint inventor." Ethicon, 135 F.3d at 1460 (quotation marks omitted); see Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1377 (Fed. Cir. 2004) ("[A] person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known in the current state of the art." (quotation marks omitted)). Moreover, a joint inventor must "contribute in some significant manner to the conception or reduction to practice of the invention [and] make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured

against the dimension of the full invention." Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998); see Caterpillar, 387 F.3d at 1377 (quoting Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997)).

Here, Borg Indak asserts that Benson contributed the extender for a lumbar support adjustor. However, the contribution of the extender is insignificant when measured against the full dimension of the invention of claim 11, not just because it was in the prior art, but because it was part of existing automobile seats, and therefore including it as part of the claimed invention was merely the basic exercise of ordinary skill in the art. See Fina Oil, 123 F.3d at 1473 ("The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, also does not make one a joint inventor. Therefore, a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art." (citations omitted)); see also Eli Lilly, 376 F.3d at 1362 ("A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception.").

Borg Indak admitted at oral argument that a lumbar support adjustor with an extender existed in automobile seats in the prior art. Thus, Benson's contribution of supplying the extender to the patented invention was the exercise of ordinary skill in the art. The specification of the '748 patent makes clear that the automobile seat, including its lumbar support adjustor and extender, comprises the existing object on which the invention (i.e., the control module) operates, or the background to the invention. For example, the specification states that the "invention can . . . be implemented with a wide variety of seat systems regardless of the particular vendor or [model] to provide a

massage function without interfering with [existing features and mechanisms in the seats]." '748 patent col.4 ll.19–24; see also id. at abstract ("[The control module's improved functions and features] do not require alternative wiring harness changes and do not affect existing operations of a memory or non-memory seat control mechanism."); id. at col.2 ll.28–31 ("[A] module interfaces and integrates with existing and future automotive seat control hardware and software, as pertinent, to provide complementary functions especially including the new automatic seat lumbar massage feature."). As Borg Indak admitted, the extender was an existing feature in an automobile seat. In fact, the necessity for the invention described in the '748 patent arose from the fact that existing automobile seats had the parts required to provide a massage (e.g., lumbar support adjustors including extenders), but simply lacked the controller that would move those parts in a way that would provide a massage. See id. at col.4 ll.43–46 ("Any automotive seat adjustment system for which a lumbar support position sensor is engineered and available as a standard or as an optional offering is a candidate for integration of a massage control module 34."). Thus, Benson's suggestion that the control module be capable of operating with an automobile seat that has a lumbar support adjustor including an extender only amounted to the exercise of ordinary skill in the art.

Further supporting the conclusion that Benson's contribution of the extender was insignificant when measured against the full dimension of the invention of claim 11, the specification and claims of the '748 patent primarily focus not on the structure of the seat itself, but on the structure and function of the control module, which operates the seat. The specification mentions the extender only once in a twenty-column patent.

The only time that the specification mentions the extender, it does no more than refer to it as the background upon which the invention is built. The specification describes how the extender is controlled by a motor, and the figures simply represent the extender 30 as a box in the circuit diagram of the control system, showing where it fits into the overall operation of the control module. See id. at col.4 ll.28–33 ("A second motor 28 controls a lumbar support extender 30 and it governs the degree to which the lumbar support extends outwardly from the seat back toward a spinal curvature of an occupant. Both mechanisms 26 and 30 affect the position of the lumbar support 32 of the seat mechanism 16."); id. at Figs. 1 & 2 (numeral 30). The patent contains no description of the physical characteristics of the extender, nor does it contain any drawing of the extender.

In Hess, we held that Hess was not a co-inventor, when he had explained the state of the art to the inventors and had suggested that the inventors use a particular material in their product. 106 F.3d at 980-81. In this case, as in Hess, Benson's contribution of the extender amounted to "nothing more than explaining to the inventors what the then state of the art was and supplying a product to them for use in their invention." Id. at 981. Also, like the situation in Hess, the "extensive research and development work that produced" the claimed control module was done by Nartron's employees. Id. Although Benson claims to have researched and developed a particular extender, Borg Indak admits that the basic concept of an extender, which is all that is disclosed in the '748 patent concerning the extender, was in the prior art. Similarly to Hess, therefore, Benson cannot be considered a co-inventor of claim 11. See id. Thus, in a factually similar case, we have held a putative inventor's contribution not to rise to

the level of co-inventorship. This is not a case in which a person claims to be an inventor because he has suggested a non-obvious combination of prior art elements to the named inventors. Such an individual may be a co-inventor. There is not, and could not be, any claim that the addition of the extender here was anything but obvious. Benson's contribution therefore does not make him a co-inventor of the subject matter of claim 11.

One further point should be made. Borg Indak asserts that Benson was the inventor of the sole feature added by claim 11. However, a dependent claim adding one claim limitation to a parent claim is still a claim to the invention of the parent claim, albeit with the added feature; it is not a claim to the added feature alone. Even if Benson did suggest the addition of the prior art extender to what Nartron had invented, the invention of claim 11 was not the extender, but included all of the features of claims 1, 5, and 6, from which it depends. It has not yet been determined whether Benson contributed to the invention of claim 1 (although he does not claim to be a co-inventor with respect to claims 5 and 6). If Benson did not make those inventions, he does not necessarily attain the status of co-inventor by providing the sole feature of a dependent claim. See id. (holding that Hess was not a co-inventor, even though he supplied "heat-shrinkable plastic," which was the only additional limitation recited in dependent claim 12 of the patent in suit).

Borg Indak also asserts that Benson was a co-inventor of the '748 patent because he realized that a control module with certain specifications would be useful, and he gave Nartron a description detailing the ultimate functions of the control module. Nartron, according to Borg Indak, simply carried out the invention by building that

control module. However, "[o]ne who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor." Garrett Corp. v. United States, 422 F.2d 874, 881 (Ct. Cl. 1970); see also Eli Lilly, 376 F.3d at 1359 (stating that one who is "too far removed from the real-world realization of an invention" is not a co-inventor); Ethicon, Inc. v. U.S. Surgical Corp., 937 F. Supp. 1015, 1035 (D. Conn. 1996) ("An entrepreneur's request to another to create a product that will fulfill a certain function is not conception—even if the entrepreneur supplies continuous input on the acceptability of offered products." (quotation marks omitted)), aff'd, 135 F.3d 1456 (Fed. Cir. 1998). Thus, Benson is not entitled to co-inventorship by simply posing the result to Nartron and leaving it to Nartron to figure out how to accomplish it.

We have considered Borg Indak's remaining arguments and find them unpersuasive.

## CONCLUSION

Accordingly, the judgment of the district court is reversed[*] and the case is remanded to the district court for further action consistent with this opinion.

## REVERSED

---

[*] The district court in footnote 2 noted that Borg Indak had alleged that Benson was a co-inventor of the subject matter of other claims in the '748 patent, but that, in light of its ruling on claim 11, it need not address those arguments. We similarly express no opinion on those other claims.