# United States Court of Appeals for the Federal Circuit

---

**PLASTIPAK PACKAGING, INC.,**
*Plaintiff-Appellant*

**v.**

**PREMIUM WATERS, INC.,**
*Defendant-Appellee*

---

2021-2244

---

Appeal from the United States District Court for the Western District of Wisconsin in No. 3:20-cv-00098-wmc, Judge William M. Conley.

---

Decided:  December 19, 2022

---

CHRISTOPHER ROBERT DILLON, Fish & Richardson P.C., Boston, MA, argued for plaintiff-appellant.  Also represented by WHITNEY REICHEL; AHMED JAMAL DAVIS, CHRISTOPHER DRYER, Washington, DC; OLIVER RICHARDS, San Diego, CA.

JEFFREY COSTAKOS, Foley & Lardner LLP, Milwaukee, WI, argued for defendant-appellee.  Also represented by KIMBERLY KRISTIN DODD, SARAH ELIZABETH RIEGER; DANIEL FLAHERTY, ANDREW GROSS, Chicago, IL.

---

Before NEWMAN, STOLL, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

In this patent case, the District Court granted summary judgment in favor of Defendant-Appellee Premium Waters, Inc. ("Premium Waters"), finding that Plaintiff-Appellant Plastipak Packaging, Inc.'s ("Plastipak") twelve patents-in-suit were invalid for nonjoinder under pre-AIA 35 U.S.C. § 102(f) (2006).[1] On appeal, the parties dispute whether summary judgment was proper. We reverse and remand.

## I

### A

Plastipak owns U.S. Patent Nos. 8,857,637; 9,033,168; 9,139,326; 9,403,310; 9,522,759; 9,738,409; 9,850,019; 10,023,345; 10,214,311; 10,214,312; 10,266,299; and 10,457,437.[2] Each patent is entitled "Lightweight Plastic Container and Preform" and claims priority to U.S. Application No. 11/749,501, filed on May 16, 2007, which was a continuation-in-part of U.S. Application No. 11/368,860, filed on March 6, 2006. Each patent lists Richard C. Darr and Edward V. Morgan as inventors.

---

[1] AIA refers to the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011). Because the application that led to the patents-in-suit never contained a claim having an effective filing date on or after March 16, 2013, or a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, pre-AIA law applies. *See* AIA § 3(n)(1), 125 Stat. at 293.

[2] Each patent or patent application will be referred to by the last three digits of its patent or application number.

All twelve patents-in-suit generally concern plastic containers and plastic container preforms with a neck portion (also called a neck finish).[3] The neck portion contains threads for screwing on or off a closure (e.g., a bottle cap); a continuous or discontinuous tamper-evident formation ("TEF") to show that the bottle has been opened; and a support flange (also called a support ring) to facilitate handling during manufacturing.

One view of such a bottle is found in Figure 1 of the '637 patent:



_____

[3]    We follow the parties' and District Court's convention of referring to the "containers" with which the patents are concerned as bottles.  "Preforms" become fully formed plastic bottles during the manufacturing process.

J.A. 41. The neck portion (16) includes a support flange (18) with an upper surface (20) and a lower surface (22).

A close-up view of a neck portion is shown in Figure 6 of the '637 patent (annotated by the parties with the names of the numbered features):



J.A. 5305. The TEF (28) in this Figure 6 embodiment is discontinuous; that is, there are multiple TEFs rather than a single, continuous formation.[4]

---

[4] The patents and parties use the singular and plural terms "TEF" and "TEFs" interchangeably, and we do so as well.

A cross-sectional side view of a neck portion is shown in Figure 5 of the '637 patent (again annotated by the parties in accordance with the patent):



J.A. 5305. The X dimension in Figure 5 (delineated by the vertical line to the far left of the diagram) represents a measurement of the vertical distance from the top of the dispensing opening/neck portion (30) to the lower surface of the support flange (22), including the threads and a TEF. Decreasing the magnitude of the X dimension can result in lighter weight bottles and preforms, with related economic and manufacturing benefits.

The patents-in-suit can be split into two groups. Seven patents – the '637, '168, '759, '409, '019, '345, and '312 – have claims reciting neck portions with an X dimension of 0.580 inches or less. For simplicity, and following the lead of the parties and the District Court, we refer to this as the "X Dimension Limitation" and this group of seven as the "X

6       PLASTIPAK PACKAGING, INC. v. PREMIUM WATERS, INC.

Dimension Patents."[5]  Five patents – the '326, '310, '311, '299, and '437 – have claims reciting a discontinuous TEF. We refer to this as the "Discontinuous TEF Limitation" and this group of five as the "Discontinuous TEF Patents."[6]

B

The parties present competing stories of invention concerning Plastipak's twelve patents.  Plastipak contends that Darr and Morgan were the sole inventors.  Premium Waters counters that the patents should have included a third co-inventor, Alessandro Falzoni, an employee of SACMI Imola ("SACMI"), an Italian company.

Certain details of the process leading to the patented inventions are undisputed.  Plastipak and Premium Waters agree that Falzoni worked on what SACMI referred to as its "Multi-Lok 27" or "ML27" project.  The ML27 concerned a design that included a neck portion, a specialty closure, and a discontinuous TEF.  The parties further agree that over the course of several months in 2005 and 2006, Falzoni and his SACMI colleagues interacted with

---

[5]    To be precise, none of the patents includes claims literally reciting an "X dimension."  Instead, the claims recite some variation of the following language: "wherein the vertical distance from the dispensing opening to the lower surface of the support flange, including threads and the tamper-evident formation, is 0.580 inches or less."  J.A. 47 ('637 patent at 7:7-10).

[6]    Several of the patents-in-suit contain claims reciting a "means for indicating tampering" or "additional means for indicating tampering."  *See, e.g.*, J.A. 46 ('637 patent at 6:63-64).  Before the District Court, Premium Waters argued that these are means-plus-function claims, whose required structure includes a discontinuous TEF.  *See* J.A. 1631 nn.6-8.  Plastipak does not challenge this contention on appeal.

Darr and other Plastipak personnel and, during this period, Plastipak considered trying to obtain exclusive rights to SACMI's ML27 design.

In the course of these Plastipak-SACMI interactions, on June 13, 2005, Falzoni emailed Darr, stating he was sending Darr a file of the "3D model of the neck finish," adding that "[t]he area below the neck support ring has been left undefined and you can change it at your ease." J.A. 2331. Images of what Premium Waters contends is the model sent by Falzoni to Darr were reproduced in this litigation and are shown below:



J.A. 5338. The model did not explicitly depict a lower surface of a support flange. Because the X Dimension Limitation is the distance between the dispensing opening and the lower surface of the support flange, the absence of the latter feature gives rise to a dispute as to whether the X Dimension of this 3D model can be determined. The parties further dispute whether the 3D model concerned a metal tool for testing closures and whether the dimensions of the 3D model would have been passed on to any container or container preform.

On the same day he received Falzoni's email, Darr responded by sending back to Falzoni a file with a design that included a lower surface of a support flange and a 0.591-

inch X Dimension.  This is shown below (the X Dimension is again indicated by the line furthest to the left):



J.A. 2337.  In Darr's email, he asked Falzoni to inform him if the dimensions were acceptable.  In response, Falzoni stated that he had examined the file from Darr, did not offer any corrections, and added "everything looks right." J.A. 2333.

Plastipak and SACMI continued communicating about the ML27 design, including by Darr providing designs to SACMI with increasingly large X Dimensions, of 0.631 inches and 0.641 inches.  Meanwhile, in November 2005, an internal SACMI presentation on the ML27 project touted its shorter neck portion and included an embodiment with an X Dimension of roughly 0.5787 inches (i.e., less than 0.580 inches).  However, it appears Falzoni did not share this document with its smaller X Dimension with Plastipak during the relevant time.  Eventually, in early 2006, the discussions between Plastipak and SACMI broke down.  In March 2006, Darr and Morgan filed the patent application that eventually resulted in the patents at issue.

C

In January 2020, Plastipak sued Premium Waters in the United States District Court for the Western District of Wisconsin for infringement of various claims of its twelve patents.  As part of discovery, Falzoni testified in a video

deposition about his June 2005 email.  During the deposition, Falzoni opened a file containing a 3D model that had purportedly been attached to his original email.  Falzoni then measured the neck finish in that model, testifying it had an X Dimension of approximately 0.563 inches, based on what Falzoni identified as the end of the support ring. When questioned about the X Dimension, Falzoni stated: "There was just a reasonable indication of where it should – it should be, but since it – there wasn't the lower surface, we cannot say that there was the unmistakabl[e] surface height."  J.A. 744.

The parties dispute whether Falzoni's testimony supports Premium Waters' position that Falzoni is a co-inventor based on his contribution to the X Dimension Limitation.  The 3D model also included a discontinuous TEF, another feature Premium Waters asserted entitles Falzoni to co-inventor status, though the parties do not agree on whether Falzoni contributed anything more than the state of the art.

Premium Waters eventually moved for summary judgment of invalidity, asserting that the patents were invalid for failure to include Falzoni as a joint inventor, because he contributed the X Dimension Limitation and the Discontinuous TEF Limitation.  The District Court granted Premium Waters' motion and entered final judgment in favor of Premium Waters.

In explaining the bases for its decisions, the District Court stated that Falzoni was "at least" a joint inventor of "the patented invention" because he had disclosed to Darr a neck finish measuring less than 0.580 inches with a discontinuous TEF.  J.A. 28.  The Court noted that although the image of the 3D model lacked a lower surface of a support flange, the image constituted clear and convincing evidence of Falzoni's disclosure, leaving "no doubt" that the image "contributed significantly to the conception of a complete neck finish."  J.A. 28.  The Court further observed

10   PLASTIPAK PACKAGING, INC. v. PREMIUM WATERS, INC.

that, even if the image were of a metal testing tool (and not of a bottle or preform), the dimensions – including the X Dimension – of that tool would be carried through to a plastic preform made from the tool. **[J.A. 28 n.17, J.A. 25 ("In other words, a preform created by this tool would have the same X dimension as that of the tool.")]** Finally, and "ultimately controlling" in its view, the District Court found the record was

> robust in demonstrating the further collaboration between Falzoni and Darr in arriving at the essential invention. Indeed, the *same day* that Falzoni sent Darr the 3D image, Darr responded with two emails describing his reaction to the 3D image and creation of drawings based on it. The cherry on top for this court, and it is confident for any *reasonable* jury, is that any potential business relationship between Plastipak and SACMI with respect to joint use of the ML27 design fell apart in March 2006, the same month that the '860 application was filed, calling into question any basis for Darr claiming an honest mistake in failing to name Falzoni as an inventor.

J.A. 28-29.

Plastipak timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

"In patent appeals, we apply the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1295 (Fed. Cir. 2014) (internal quotation marks omitted). Here, following Seventh Circuit law, we review the District Court's grant of summary judgment de novo. *See, e.g.*, *Wis. Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1352 (Fed. Cir. 2018) (applying Seventh Circuit law).

We construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.*

Summary judgment is proper "'if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). We do not "'weigh the evidence' or 'determine the truth of the matter'" but "merely 'determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"A factual dispute is genuine only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Alston v. City of Madison*, 853 F.3d 901, 910-11 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A factual dispute is material, rather than irrelevant, if, based on the underlying substantive law, it is probative of what a party must prove in order to prevail on its claim. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

The substantive law pertinent to the dispute before us is the law governing inventorship. Applicable here is the pre-AIA version of 35 U.S.C. § 102(f), which provides: "A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented." Inventorship presents a question of law which may be predicated on underlying factual findings. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

To be a joint inventor, one must:

(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain

12　PLASTIPAK PACKAGING, INC. v. PREMIUM WATERS, INC.

> to the real inventors well-known concepts and/or
> the current state of the art.

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). Where these requisites are satisfied but a patent fails to name the joint inventor, that patent may be invalid for non-joinder. *See id.* at 1348-49.[7] While inventorship is evaluated on a claim-by-claim basis, the failure to join an inventor of any claim invalidates the entire patent. *See Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020); *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002); *Ethicon*, 135 F.3d at 1460.

"[A] moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). In connection with assertions of joint inventorship, meeting that standard requires alleged joint inventors to "prove their contribution to the conception with more than their own testimony concerning the relevant facts." *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1382 (Fed. Cir. 2004). Whether an alleged joint investor's "testimony has been sufficiently corroborated is evaluated under a 'rule of reason analysis,' which requires that an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Id.* (internal quotation marks omitted).

---

[7]　Some mistakes in inventorship can be corrected, saving the validity of the patent. *See* 35 U.S.C. § 256. Given our disposition, which will require further proceedings with respect to validity, we do not reach the parties' dispute as to whether Plastipak is entitled to correct its patents.

The first step in assessing inventorship is ordinarily claim construction, in order to determine the scope of a claim's subject matter. *See Trovan*, 299 F.3d at 1302. Where, as here, the parties do not dispute the scope of any particular claim term, however, claim construction is not necessary. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008); *see also In re VerHoef*, 888 F.3d 1362 (Fed. Cir. 2018) (analyzing joint inventorship without mentioning claim construction). Instead, the disputes before us are whether, applying the summary judgment standard, a reasonable factfinder could fail to find that Falzoni was a co-inventor of the X Dimension Patents and Discontinuous TEF Patents. As explained below, we conclude that a reasonable factfinder, taking the evidence in the light most favorable to Plastipak as the nonmoving party, could reject Premium Waters' position on both of these points. Accordingly, we find these matters present genuine disputes of material fact and summary judgment is not warranted.

## III

### A

Summary judgment was improper with respect to the X Dimension Patents; that is, those that claim a neck portion measuring 0.580 inches or less from a dispensing opening to a lower surface of a support flange. The District Court found that "Falzoni was at least a joint inventor of the patented invention, having initially disclosed to Darr a design of a neck finish measuring less than 0.580 inches." J.A. 28. To invalidate the relevant patents on summary judgment, Premium Waters had to present evidence from which all reasonable finders of fact, taking the evidence in the light most favorable to Plastipak, would have to conclude that Falzoni actually contributed in a legally sufficient manner to the invention. *See, e.g.*, *Trovan*, 299 F.3d at 1302. The record reflects a genuine dispute of material

14    PLASTIPAK PACKAGING, INC. v. PREMIUM WATERS, INC.

fact as to whether Falzoni sufficiently contributed to the X Dimension Limitation.

Premium Waters' principal support for its position is the June 2005 email Falzoni sent to Darr, which appears to have attached the 3D model. In the email, Falzoni stated that the model was of a neck portion with a neck support ring, which Premium Waters asserts "necessarily includes a lower surface." Response Br. 41. As the District Court recognized, however, the 3D model did not expressly disclose a lower surface of a support flange. **[See J.A. 11, 28.]** While Falzoni testified in his deposition that he knew where the lower surface was and also that he could measure the X Dimension – and did so during his deposition, finding it was approximately 0.563 inches, meeting the claim limitation of being less than 0.580 inches – each of these propositions was highly contested by Plastipak, which presented evidence from which a reasonable factfinder could reach conclusions contrary to those proposed by Premium Waters.

For example, Plastipak points to portions of Falzoni's testimony in which he acknowledged uncertainty about the exact measurement of the X Dimension in the 3D model. Falzoni testified: "There was just a reasonable indication where it should – it should be, but since it – there wasn't the lower surface, we cannot say that there was the unmistakabl[e] surface height." J.A. 744. Plastipak also presented testimony from its expert, Ottmar Brandau, who opined that the 3D model did not contain any support flange, did not depict a preform or bottle, and did not, in his expert view, show an X Dimension of 0.580 inches or less. Moreover, there was evidence that the 3D model concerned a tool for testing closures and not for manufacturing bottles or preforms, which – if credited – could undermine the weight a reasonable factfinder would place on the 3D model.

Plastipak also introduced evidence from which a reasonable factfinder could find that Darr and Morgan conceived of their inventions entirely independently of any work on which Darr and Falzoni had collaborated. There is, for example, evidence that Plastipak's claims originated with Morgan in January 2006 and that Morgan personally derived the 0.580-inch X Dimension based on measurements he took of human thumbs. The record could likewise support a finding that Falzoni contributed nothing to the X Dimension Limitation. It contains evidence that: Darr submitted designs to Falzoni of neck portions with X Dimensions greater than 0.580 inches – initially 0.591 inches and later increasing to 0.641 inches – without objection from Falzoni; Falzoni believed Darr was best suited to choose the thickness of the support flange, which would necessarily affect the height of the X Dimension; and Figure 6, on which Premium Waters relies as a purported embodiment of all twelve patents-in-suit, may have been conceived of and resulted from work by Darr, not Falzoni.

Ultimately, we agree with Premium Waters that it presented sufficient evidence from which a reasonable factfinder *may* find clear and convincing evidence that Falzoni was a joint inventor of the X Dimension Patents. Such a finding could be grounded in Falzoni's testimony, as corroborated by the 3D model and the testimony of another SACMI employee, as well as the arguably suspicious timeline, in which the collapse of Plastipak's efforts to license SACMI's ML27 design was quickly followed by Darr and Morgan filing their patent application. Such a finding could lead to the conclusion that the X Dimension Patents are invalid for failure to name Falzoni as an inventor. Crucially, however, nothing in the record *requires* a reasonable factfinder – particularly one who is resolving all fact disputes, and drawing all reasonable inferences, in

Plastipak's favor – to make these necessary findings.[8]  Accordingly, summary judgment of invalidity is not warranted.

B

Summary judgment invalidating the Discontinuous TEF Patents is also inappropriate.  With respect to these patents, there is, at a minimum, a genuine dispute of material fact as to whether Falzoni contributed anything other than what was already the state of the art.[9]  *See Nartron Corp. v. Schukra U.S.A. Inc.,* 558 F.3d 1352, 1356-57 (Fed. Cir. 2009) (providing well-known principles does not make one a joint inventor); *Eli Lilly & Co. v Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004) ("A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception."); *see also In re VerHoef*, 888 F.3d at 1366 (reviewing for

---

[8]    In reaching this conclusion, we have considered not just the evidence highlighted in the body of this opinion, but all of Premium Waters' evidence, such as SACMI's November 2005 internal presentation, and similarities between the figures in the patents and the '860 patent application, on the one hand, and 2D images created by Premium Waters based on Falzoni's purported 3D model, on the other.  Whether the evidence is considered individually or in totality, it does not require a reasonable factfinder to find that Falzoni is a co-inventor of the X Dimension Patents.

[9]    We address these issues with respect to just five of the patents-in-suit, as this is how the parties have presented the issue on appeal.  In the District Court, Premium Waters sought summary judgment of invalidity with respect to eleven of the twelve Plastipak patents – all but the '312 patent – on the basis of Falzoni's purported contribution to the Discontinuous TEF Limitation.  **[*See* J.A. 1630-31]**

substantial evidence Patent Trial and Appeal Board's determination that feature of invention was not well-known in art).

Plastipak marshaled evidence from which a reasonable factfinder, and particularly one viewing the evidence in the light most favorable to Plastipak, could find that a discontinuous TEF was well-known and constituted the state of the art, and, therefore, Falzoni's contribution of a discontinuous TEF was not sufficient to justify joint inventorship. This evidence included several prior art patents which might be read as disclosing a discontinuous TEF – which is how the Examiner evaluating Plastipak's applications read at least one of them – as well as statements made by Falzoni.[10]  Premium Waters disputes all this, based, in part, on its interpretation of testimony from Plastipak's expert. All of this demonstrates there is a genuine dispute as to the material fact of whether Falzoni's purported contribution was merely the state of the art.  *See Nartron,* 558 F.3d at 1356-57 (state of art is factual question); *Pannu*, 155 F.3d at 1351 (state of art is material fact in evaluating nonjoinder).  Even the District Court recognized that "[t]he parties dispute whether the use of a [TEF] that is discontinuous, viewed in isolation, is another novel aspect of the patents-in-suit."  J.A. 6 n.5.  Resolution of this fact dispute is necessary in order to determine whether Falzoni was a joint inventor and, thus, whether the patents are invalid for nonjoinder.  Accordingly, summary judgment of invalidity of the Discontinuous TEF Patents is not proper.

---

[10]  The parties dispute whether Falzoni's purported statements are inadmissible hearsay.  We need not reach this issue because Plastipak's other evidence was sufficient to create a genuine dispute of material fact precluding summary judgment.  *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 690-91, 691 n.3 (7th Cir. 2001).

## C

The District Court concluded that any reasonable factfinder would have to side with Premium Waters on these disputed facts. We disagree. Although the District Court may be correct that Premium Waters presented an "overwhelming" amount of evidence, J.A. 1, that does not mean Plastipak presented an insufficient amount of evidence from which a reasonable factfinder could find, instead, that Falzoni was not a joint inventor. Moreover, while the District Court may have been understandably skeptical of Plastipak – based on the apparent tension between Darr's testimony that he was unaware in 2005 of others' efforts to develop lightweight neck finishes and the subsequent production, by Premium Waters, of the SACMI evidence, which Plastipak had "failed to disclose timely" and "effectively (if not intentionally) hid[]," J.A. 15-20, 30 n.18 – the SACMI evidence did not erase from the record Plastipak's evidence of its alleged independent invention. Just because Plastipak's witnesses, in the words of Premium Waters, "professed no recollection" of the SACMI evidence does not render that evidence "essentially uncontroverted," as Premium Waters wrongly states. Response Br. 2. A factfinder, not the trial court at summary judgment, will need to weigh all of the competing evidence and draw its own reasonable conclusions as to inventorship. *See generally Runkel v. City of Springfield*, 51 F.4th 736, 741-42 (7th Cir. 2022).

While we have stated that "[c]onception is the touchstone of inventorship," *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994), we have also emphasized that "[c]ontributions to realizing an invention may not amount to a contribution to conception if they merely explain what was then state of the art," *Eli Lilly*, 376 F.3d at 1359 (internal quotation marks omitted). We have further observed that the "line between actual contributions to conception and the remaining, more prosaic contributions to the inventive process that do not render the

contributor a co-inventor is sometimes a difficult one to draw." *Eli Lilly*, 376 F.3d at 1359.

As this case illustrates, often the assessment of what contribution has been made by a purported inventor, and whether that contribution is significant, is bound up with material fact disputes which a reasonable factfinder could resolve in favor of either party. Here, specifically, a reasonable factfinder could find Falzoni did not provide Darr with the X Dimension Limitation and merely "contributed" the prior art concept of a Discontinuous TEF – and these findings would mean Falzoni is not a joint inventor. Alternatively, a reasonable factfinder could find the opposite, in which case Falzoni should have been listed on the Plastipak patents as a joint inventor. On the record before the District Court, these genuine disputes of material fact were not amenable to resolution on summary judgment.

Hence, again, the grant of summary judgment was not proper.

## IV

We have considered the parties' remaining arguments and find them unpersuasive.

We have not weighed the evidence nor determined the truth of the matters before us. Our role is to evaluate whether the record reveals genuine disputes of material fact precluding summary judgment, and we find that there are. Therefore, we must reverse the District Court's grant of summary judgment in favor of Premium Waters and remand to that Court for further proceedings not inconsistent with this opinion.[11]

---

[11] Premium Waters moved for summary judgment on other grounds in addition to improper inventorship, including indefiniteness. On remand, it will be for the District

20          PLASTIPAK PACKAGING, INC. v. PREMIUM WATERS, INC.

## **REVERSED AND REMANDED**

Costs

No costs.

---

Court to determine what motions it must now consider or whether, instead, the case is ready for trial.